This appeal brings up the dismissal and removal of prosecutor from his position as chief clerk in the office of the Clerk in Chancery. Prosecutor was appointed pursuant to R.S. 2:2-20. The term being unspecified and indefinite it was in the unclassified service pursuant to R.S. 11:4-4(m) and since he was a veteran of World War I, prosecutor could be removed for good cause only, after a fair and impartial hearing. R.S. 38:16-1.
We omit review of the earlier steps and deal directly with the meritorious issue which terminated in a mandate from the Supreme Court to dispose of the matter on its merits. A specification of charges was served and the matter proceeded to hearing on Charges 1, 7 and 8 which were as follows:
"Charge No. 1
"That you impeded and delayed the administration of the various state departments by refusing to file state papers, without the payment of filing fees, and on July 9, 1945 you were advised, under an opinion of the Attorney General, that the Office of the Clerk in Chancery, *Page 87 
as well as other similar offices, was without authority to impose any charges for the filing of official papers on behalf of the state. That despite this official ruling, you continued to refuse to accept state papers for filing, resulting in the delay in the collection of state taxes by injunction proceedings in Chancery; and as late as November 13, 1945 it became necessary further to advise the Clerk in Chancery that papers of the New Jersey Unemployment Compensation Commission should likewise be filed without the payment of fees therefor, at which time the Attorney General called attention to his previous opinion of July 9th."
"Charge No. 7
"In June, 1946, without the knowledge or consent of the Clerk in Chancery, you approached the then Chancellor of the state, the Civil Service Commission, and the State Finance Commissioner, with the request that you receive an additional title and additional compensation, for the performance of duties which were then a part of your office duties; thereafter you requested the Civil Service Commission to set up additional duties which did not at that time exist, and which in fact had been discontinued in 1945, to wit — the preparation of the Chancery calendar. That you did induce the then Chancellor to sign a form (CS-21) requesting your appointment as Administrative Assistant, Grade III, salary range $2,400 to $3,000, placing you additionally on the Court's payroll, which is distinct from the Clerk's payroll. The effect of this, all without the knowledge or consent of the Clerk, would be that you would receive a base salary of $6,250 as Chief Clerk, increased by annual increments until a maximum salary of $7,500 was reached; and in addition, you would receive from the Court's payroll the sum of $2,400, increased by annual increments until it reached a maximum of $3,000, thus making your total annual salary the sum of $10,500. As Chief Clerk, you have charge of the preparation and full authoritly for the signing of payrolls, work programs, vouchers and other documents relating to fiscal affairs; that you surreptitiously tried to place yourself on two separate payrolls and thus obtain an additional secret remuneration, without the knowledge of your superior, the Clerk in Chancery."
"Charge No. 8
"That on October 8, 1946, without the knowledge and consent of the Clerk in Chancery, you submitted requests to the Finance Commissioner, signed by you, requesting reservation of the sum of $2,400 from the unexpended balance in the salary appropriation for the Court's payroll, the effect of which would be to authorize you, upon the approval of a new title, to submit a supplemental payroll granting you a retroactive increase to July 1, 1945."
At the hearings in May and June, 1947, on the first charge, it developed that prosecutor in accordance with a recommendation in the auditor's report for 1945, charged filing fees for papers filed by State departments. This led to an opinion *Page 88 
of the Attorney General on July 9, 1945, that the office of Clerk in Chancery was without authority to charge for the filing of papers by the Attorney General's office. The request for the Attorney General's opinion was made by the Clerk in Chancery who was aware of the recommendation of the auditor. Thereafter the Attorney General's office was not charged filing fees. In September, 1945, a question arose as to charging filing fees against the Unemployment Compensation Commission. As to this, the Clerk in Chancery wrote the chief counsel of the Unemployment Compensation Commission in September, 1945, as follows: "Please be advised that our interpretation of the opinion by the Attorney General regarding filing fees is that all papers filed in behalf of the Attorney General only, are filed without charge."
In November, 1945, the Attorney General gave a further opinion that the Unemployment Compensation Commission should not be charged filing fees and in the same communication advised that the prior opinion covering official papers filed by the Attorney General's office applied with equal force to papers filed by such a body as the Unemployment Compensation Commission. It should be noted that the Clerk in Chancery recognized that a question was raised for he noted on the auditor's report "Remedial legislation may be necessary" and in his annual report to the Governor dated July 30, 1945, said: "The other instance regarding questioning of the requirement regarding payment of fees concerned the Attorney General's Department. The law makes no provision for exemption from these payments by any state agency, and it therefore was a recommendation of the State Auditor that it was mandatory that any and all papers filed by the Attorney General's Department should be paid for in the same manner as any others."
We find nothing to support the dismissal grounded upon Charge No. 1 and it is significant that the point was neither argued nor briefed by the Attorney General.
The charge that prosecutor induced the Chancellor "to sign a form (CS-21) requesting your appointment as Administrative Assistant, Grade III * * * all without the knowledge *Page 89 
or consent of the Clerk, * * * and that you surreptitiously tried to place yourself on two separate payrolls and thus obtain an additional secret remuneration, without the knowledge of your superior, the Clerk in Chancery" finds no support in the record. So far as inducing the Chancellor is concerned, there is no evidence from which such an inference could be drawn. The testimony relied upon in the defendant's brief is that of Mr. Homer Zink and Mr. Charles Yard and so far as it throws any light on the subject, it certainly does not support the charge. Assuming, without deciding, that an effort by the petitioner, secretly and without the knowledge of the Clerk, to obtain an appointment in the office of the Chancellor, would be an offense for which he might be removed from office, still there is no proof of secrecy or of the Clerk's lack of knowledge. Indeed, there is uncontradicted evidence that the Clerk knew and approved.
For the reasons stated, the dismissal and removal of prosecutor as chief clerk in the office of the Clerk in Chancery is reversed and set aside.